UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANNY V. SELLERS,

                    Petitioner,

vs.                                    Case No. 3:13-cv-1497-J-39MCR

SECRETARY, DOC, et al.,

                    Respondents.

_____

**ORDER**

**I.  STATUS**

Petitioner Danny V. Sellers, an inmate of the Florida penal system, challenges a 2008 (Duval County) conviction for accessory after the fact and aggravated assault.  He filed a Petition Under 28 U.S.C. § 2254 by a Person in Custody Pursuant to a State Court Judgement (Petition) (Doc. 1).  He is proceeding on an Amended Petition (Doc. 9) and is represented by counsel.  He also relies on a Memorandum of Law and Fact Supporting Amended Petition for Writ of Habeas Corpus and an Appendix of Exhibits (Doc. 10).  He raises three grounds in the Amended Petition.  The Court will address these grounds, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required in this Court.

Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 20).  In support of their Response, they provide an Index to Appendix (Exhibits) (Doc. 20-1).[1]  Petitioner filed a

_____

[1]  The Court hereinafter refers to the documents contained in the Appendix as "Ex."  Where provided, the page numbers referenced

Reply to the State's Response to the Petition for Writ of Habeas Corpus (Doc. 21). <u>See</u> Order (Doc. 13). He also filed a Notice of Filing Supplemental Authority in Support of the Petition for Writ of Habeas Corpus (Doc. 22).

## II. STANDARD OF REVIEW

The Court will analyze the claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011). The three exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts. <u>Id</u>. at 100. The Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, the Court will apply this presumption to the factual determinations of both trial and appellate courts. <u>See</u> <u>Bui</u> <u>v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

---

in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced. Also, the Court will reference the page numbers assigned by the electronic docketing system where applicable.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Of note, ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

in a post conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

> Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799–800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2 (N.D. Fla. May 17, 2011) (Report and Recommendation) (Not Reported in F.Supp.2d), report and recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16, 2011).

## IV.  PROCEDURAL HISTORY

To provide historical context to Petitioner's three grounds for habeas relief, the Court provides a summary of the state criminal case.  Petitioner was charged by an amended information with accessory after the fact, possession of a firearm by a

convicted felon, attempted first degree murder, shooting or throwing deadly missiles, tampering with evidence, and aggravated assault. Ex. A at 87-88. The state filed a Notice of Intent to Classify Defendant as an Habitual Felony Offender. <u>Id</u>. at 109-110. On July 25, 2006, Petitioner entered a Plea of Guilty and Negotiated Sentence. Ex. D at 633-35. The terms included a plea of guilty to counts one and six, accessory after the fact and aggravated assault, with the sentences to run concurrently and not total more than twenty years in prison, nor less than sixty-two months in prison. <u>Id</u>. at 633.

As a condition of his plea, Petitioner agreed to the following:

> I agree to give truthful testimony against any and/or all of the listed co-defendants in the Picket Fence Homicide case and any and/or all defendants charged in cases that I provided substantial assistance on for law enforcement, at any lawful proceeding, including any hearing, statement, deposition and/or trial(s). I further agree to the following as additional conditions of my plea: If released from custody I understand that I must make weekly telephone and/or personal contact with the lead detective assigned to my case or cases; I waive my right to withdraw this plea; I waive the 60 day time limit contained in Florida Rules of Criminal Procedure 3.170(g)(2)(A); I agree that all sworn statements given by me may be used against me in Court. I further understand that I may be sentenced up to <u>30</u> years FSP should I fail to give truthful testimony <u>if called by either the State or Defense</u>. I understand that if I fail to appear for any required court date and/or if I am arrested for any new crime that is supported by a finding of probable cause,

> my plea stands but the negotiated sentence
> does not and I may be sentenced to any lawful
> sentence which includes up to <u>30</u> years FSP. I
> admit that there is a factual basis for the
> charges to which I am pleading, and I agree
> that the Court may rely on the statements
> contained in the record provided during
> discovery, including police reports and sworn
> statements, in determining this factual basis.

Ex. D at 633 (footnotes omitted). In addition to Petitioner, the
defense attorney, the prosecutor, and the judge signed the plea
form. <u>Id</u>. at 635.

On August 9, 2006, the court swore Petitioner in after defense
counsel announced that the state agreed to nol pros four counts,
allowing the Petitioner to plead to counts one and six. Ex. D,
Transcript at 699. The agreement was described as allowing
Petitioner to be sentenced "to somewhere between 62 months Florida
Sate Prison, which is the guidelines, low end of the guidelines, up
to 20 years Florida State Prison." <u>Id</u>. at 700. The Court noted
that count six is a third degree felony, punishable by up to five
years in prison, and count one is a first degree felony. <u>Id</u>. The
prosecutor notified the Court that Petitioner "is actually eligible
as a habitual offender classification for both counts[.]" <u>Id</u>.

Defense counsel stated: "[p]art of the agreement is if Mr.
Sellers does make bond or is ROR'ed, if he is re-arrested or if he
fails to appear, he would be facing 30 years Florida State Prison."
<u>Id</u>. at 700-701. The court proceeded to swear Petitioner in and ask
him a series of questions. <u>Id</u>. at 701. The first thing the court
asked Petitioner was whether he was able to hear and understand

- 6 -

everything his counsel just stated. Id. Petitioner responded affirmatively. Id. The court then explained that Petitioner's counsel had entered guilty pleas on his behalf to two felonies: (1) accessory after the fact to murder, described as helping dispose of a body after the victim had been murdered, punishable by a term of up to thirty years, and (2) aggravated assault with a deadly weapon, punishable by a term up to five years. Id. at 701-702. The court repeated the terms of the plea agreement, noting the agreement of a term with a minimum of sixty-two months with a range up to twenty years. Id. at 702.

Petitioner confirmed that he agreed to plead guilty and the pleas were entered with his knowledge and consent. Id. The court advised Petitioner of the rights he was giving up by pleading to the offenses. Id. at 702-703. Petitioner responded that he understood. Id. at 703. Petitioner responded affirmatively that he was pleading guilty because he believed it to be in his best interest. Id. He also stated that no one forced him to plead guilty against his will. Id. Petitioner confirmed that he read and understood the form and signed it, and that his attorney explained the form to him. Id. at 704.

The prosecutor provided the factual basis for the plea:

> The state would be prepared to establish beyond a reasonable doubt that on or about September 3, 2004, in Duval County, Florida, this defendant did engage in conduct which constituted accessory after the fact to homicide. Specifically, in assisting the

- 7 -

> concealment of evidence of that homicide, to
> wit, the body.
>
> And the two persons charged with that
> homicide are Lavario Ray and Demontreo Glee.
>
> As to the 6th count, Your Honor, the
> state would be prepared to establish beyond a
> reasonable doubt that on July 5th, 2005, in
> Duval County, Florida, this defendant did
> threaten Leon Shoeman to do violence with him
> by pointing a gun at him.   And that was
> confirmed by the deposition testimony of Mr.
> Shoeman.

Id. at 704-705.

Defense counsel announced that the defense stipulated as to
count one and had no objection as to count six.   Id. at 705.
Petitioner stated he had no complaints about his counsel's
representation, and confirmed that counsel had done everything he
had asked him to do.   Id.   Petitioner also stated his counsel had
not done anything Petitioner considered to be improper.   Id. at
706.

The court found a factual basis for both pleas, found that
Petitioner freely and voluntarily entered his guilty pleas "with a
full understanding of the nature of the charges, the consequences
of the plea and the maximum possible sentence herein"   Id.   The
court accepted the pleas.   Id.   The state confirmed that it was not
seeking habitual offender status.   Id. at 706-707.

Petitioner's counsel presented an oral motion to reduce bond.
Id. at 707.   He explained that Petitioner pled to accessory after
the fact, "which basically consisted of helping another individual

- 8 -

put a body in the trunk." Id. at 707-708. Counsel notified the
Court that Petitioner cooperated with the state. Id. at 708.
Counsel then reiterated that the terms of the plea agreement
included the following: if Petitioner "is rearrested or if he fails
to appear, he is looking at 30 years in Florida State Prison." Id.
Counsel continued, "[a]nd [Petitioner] has been assured that that
is a likelihood should those things occur." Id. Defense counsel
asked the Court to take into consideration the agreement that
Petitioner would be facing substantially more time if he absconded
or re-offended when reviewing Petitioner's request to reduce his
bond. Id. at 709. The state announced that it would not take a
formal position on the request to reduce bond. Id. at 709-710.
The court denied the request to reduce bond, but left open
consideration of a request for bond with agreement of the state.
Id. at 712-713.

Petitioner was released on bond, and a capias for his arrest
issued. Ex. D at 36. The police completed an incident report
concerning an August 20, 2008 stalking incident with a credible
threat to life or injury. Id. at 639. When Petitioner was
apprehended, he was found to be in possession of marijuana and pled
guilty in Case No. 16-2008-MM-23029. Ex. E at 7.

On October 7, 2008, the sentencing judge immediately mentioned
he had seen a general offense report which concerned an arrest for
aggravated stalking, but he had not seen the arrest docket for it.
Ex. E at 6. The state responded that the arrest docket was

essentially the same as the incident report, and that the arresting officers were present.  Id.  The court told the prosecutor that he wanted to hear from the officers.  Id.  The prosecutor notified the court that he intended to publish the phone calls which led to the aggravated stalking charge.  Id.  The prosecutor also notified the court that Petitioner pled guilty to possession of marijuana the week prior to his sentencing.  Id. at 7.

A number of witnesses took the stand, including Detective S. Strawn, who testified that Petitioner was required to report on a weekly basis, he complied until April 2, 2007, and then he failed to make his weekly reports.  Id. at 15.  On May 2, 2007, Detective Strawn contacted the prosecutor to notify him of Petitioner's failure to report, and then Petitioner called her on May 4, 2007, July 14, 2007, and over a year later on August 14, 2008.  Id. at 15-16.

In addition, Detective D. Sosnowski testified concerning the recorded phone calls that were the basis for the arrest of Petitioner on the charge of aggravated stalking.  Id. at 24.  After Petitioner provided a voice exemplar, the detective identified Petitioner's voice as the male voice on the recording.  Id. at 25-26.  The prosecutor played the tape for the court.  Id.  On the tape, Petitioner says "[n]ow I seen [sic] you [Ms. Shawntrell Tinsley, the victim] again."  Id. at 33.  He proclaims "I see your car here."  Id.  Along with other rather threatening remarks, he states that he still wants to kill her but he just does not want to

do it.  Id. at 38.  Petitioner asks Ms. Tinsley who is she going to call, "[a]ll them Ghost Busters[.]" Id. at 39.

Detective Sosnowski further testified that independent of the capias, Petitioner was going to be arrested for aggravated stalking.  Id. at 45.  The detective then stated that Petitioner was arrested for aggravated stalking.  Id.  He explained the finding of marijuana was incident to Petitioner's arrest.  Id. at 45-46.

The judge said he was more concerned about the fact that Petitioner "was in fact somehow orbiting or cruising around the woman's place of employment" rather than any particular words that Petitioner expressed on the tape.  Id. at 119.  After hearing argument, the court found the following:

> You are apparently on intimate terms with killers.  You are -- if not smoking pot, you're selling marijuana or you're holding marijuana for your friends.
>
> I do find probable cause to believe that you committed the offense of stalking.  I do find more than probable cause to believe that you committed the offense of possession of marijuana.  I further find that you failed to report as directed to your controlling detective.
>
> What I find when I place all these things in context is that despite what you told me about the result of your term in prison, you have made no significant effort to change your life.  At a time when you knew, when you absolutely knew that you had been given an amazing blessing and opportunity, that you had found yourself mixed up in a homicide but the Government had agreed to give you a chance and to let you out, when you knew that this was

> your chance to demonstrate the kind of a man
> that you can be, you made no serious effort to
> turn away from the life of disorder and
> violence that you had led up to that point and
> you continued in the same vein.

Id. at 137-38.

The court sentenced Petitioner to five years on count six and
thirty years on count one, to run concurrently. Id. at 139. The
court entered the judgment and sentence on October 7, 2008. Ex. D
at 659-64. Petitioner moved to withdraw his plea.[2] Id. at 683-95.
He argued that the trial court breached the plea agreement, the
trial judge failed to disqualify himself after an ex parte
communication, the defense attorney provided ineffective assistance
of counsel by misadvising Petitioner that the court would be
lenient in sentencing him, and defense counsel provided ineffective
assistance by coercing Petitioner into waiving the issue of
disqualification of the trial judge. Id. at 684.

On May, 6, 2009, after conducting a hearing on May 5, 2009,
the circuit court entered an order denying the amended motion to
withdraw the plea after sentencing. Ex. F at 1-73. The court made
specific findings of fact and conclusions of law. Id. at 1-2.
With regard to the alleged breach of the written plea agreement,
the court noted that Petitioner pled guilty to possession of
marijuana and probable cause was found that Petitioner committed

---

[2] The parties did not provide the Court with a copy of the
February 5, 2009, Amended Motion to Withdraw Plea After Sentencing.

the offense of aggravated stalking. Id. at 1. Furthermore, the circuit court found "Defendant's sentence of 30 years was expressly contemplated on the first page of the plea agreement should probable cause for any new charges be found." Id. With respect to the court's failure to disqualify itself, the circuit judge found the motion moot as it was directed at the judge's predecessor who was administratively reassigned on January 1, 2009. Id. at 2.

In addressing the claim of ineffective assistance of counsel, the circuit court said that trial counsel produced an acknowledgment by Petitioner that he understood and agreed to waive the filing of a motion seeking disqualification of the previous judge. Id. The circuit court also found that previous counsel was very experienced and provided testimony that he fully explained the content and nature of his advice to Petitioner. Id. Finally, the circuit court related that previous counsel and the assistant state attorney both advised that the sentencing is the subject of an appeal. Id. The circuit court concluded that Petitioner "failed to demonstrate manifest injustice would occur if he were not allowed to withdraw his plea or that previous counsel failed to provide effective assistance of counsel." Id.

Petitioner appealed. Ex. G. The state answered, Ex. H, and Petitioner replied. Ex. I. On February 17, 2010, the First District Court of Appeal affirmed per curiam. Ex. J.

On January 21, 2011, pursuant to the mailbox rule, Petitioner filed a Petition for Writ of Habeas Corpus alleging ineffective

assistance of appellate counsel.  Ex. K.  In his petition, he claimed his appellate counsel was ineffective for failing to supplement the record on appeal with the transcript of the probable cause hearing for the aggravated stalking charge.  Id.  On March 4, 2011, the First District Court of Appeal per curiam denied the petition on its merits.  Ex. L.  Petitioner moved for rehearing, Ex. M, and the First District Court of Appeal denied rehearing on April 15, 2011.  Ex. N.

On April 27, 2011, pursuant to the mailbox rule, Petitioner filed a Rule 3.850 motion in the circuit court.  Ex. O.  He amended and supplemented the motion.  Id.  The circuit court denied the motion.  Id. at 132-82.  Petitioner moved for rehearing.  Ex. P at 183-257.  The court denied rehearing.  Id. at 267-68.  Petitioner appealed.  Id. at 269; Ex. Q.  The state filed a notice that it would not file an answer.  Ex. R.  The First District Court of Appeal, on September 10, 2013, per curiam affirmed.  Ex. S. Petitioner moved for rehearing and written opinion.  Ex. T.  On October 21, 2013, the First District Court of Appeal denied the motion.  Ex. U.  The mandate issued on November 6, 2013.  Ex. S.

### V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In his first ground, Petitioner claims that the trial court violated due process of law in determining that Petitioner had breached the plea agreement terms, in denying the motion to withdraw the plea, and in relying on illegal considerations in

making its determination to impose the maximum possible sentence. Amended Petition at 5. Respondents concede that Petitioner exhausted these claims by raising them on direct appeal. Response at 22.

As noted by Respondents, there is a requirement that competent, substantial evidence must be behind the trial court's finding that Petitioner breached the terms of his plea agreement. Response at 23-24. See Neeld v. State, 977 So.2d 740, 745 (Fla. 2nd DCA Mar. 26, 2008). In order to make this type of finding, the state must "present evidence establishing the breach by the preponderance of the evidence." Id.

At sentencing, the state met its burden. Not only did the court hear from the officers, the court listened to the recordings of the underlying phone calls supporting the aggravating stalking charge and arrest. Also of import, the state notified the court that Petitioner pled guilty to possession of marijuana the week prior to his sentencing. Also, the court heard testimony from a detective that Petitioner failed to report on a weekly basis for over a year. After hearing the testimony and listening to the tapes, the court found probable cause to believe that Petitioner committed the offense of stalking and the offense of possession of marijuana, and he failed to report.

Petitioner argues that the marijuana conviction should not be considered as it was later overturned. Amended Petition at 9. Assuming arguendo that the marijuana conviction may not be

- 15 -

considered to be part of this calculation, the state presented other competent, substantial evidence that Petitioner breached the terms of his plea agreement at the sentencing proceeding.  See Inqmire v. State, 9 So.3d 1278, 1281-82 (Fla. 2nd DCA May 6, 2009) (asking whether there is competent, substantial evidence to support the finding).  In this instance, the state submitted evidence establishing the breach by a preponderance of the evidence.

Petitioner is not entitled to habeas relief.  Deference under AEDPA should be given to the state court's decision.  Petitioner raised the issue on appeal, and the appellate court affirmed.  The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Petitioner also claims he was deprived of due process of law by the trial court's rejection of his motion to withdraw his plea post sentencing.  Since his sentence had already been imposed, in order to prevail on his motion, Petitioner had to demonstrate "a manifest injustice requiring correction."  State v. Partlow, 840 So.2d 1040, 1042 (citing Lopez v. State, 536 So.2d 226, 229 Fla. 1988)).  Upon review of the order denying the amended motion to withdraw the plea after sentencing, the court addressed the motion, applied the appropriate standard, and denied the requested relief.  Ex. F at 1-2.  The court first noted the finding of probable cause for the aggravated stalking offense and the fact that Petitioner

pled guilty to possession of marijuana.  In addition, the court recognized that the sentence of thirty years was expressly provided for and contemplated on the first page of the plea agreement.  Id. at 1.

In addressing the claim of ineffective assistance of counsel, the court stated that counsel produced a document showing that Petitioner agreed to waive the issue of disqualification of the previous judge, and the court recognized that counsel was very experienced and provided testimony that he fully explained the content and nature of his advice to Petitioner.  Id. at 2.  As such, the court found counsel did not provide ineffective assistance.  Finally, the court held that Petitioner failed to demonstrate manifest injustice would occur if the court did not allow him to withdraw his plea.  Id.

Upon review, not only did the plea agreement clearly state that Petitioner faced a sentence of up to thirty years if he was arrested for any new crime supported by a finding of probable cause, he was repeatedly reminded of that fact during the plea proceeding.  Petitioner signed the written Plea of Guilty and Negotiated Sentence, testified that he read and understood the form, and that his attorney explained it to him.  Even during the request for reduction of bond, defense counsel reiterated that if Petitioner were rearrested, he would be looking at thirty years in prison, and argued that this would be a significant factor in deterring Petitioner from absconding or re-offending.

- 17 -

Simply, Petitioner's thirty-year sentence was not outside the
terms of the plea agreement.  The Court finds that Norvil v. State,
No. SC14-746, 2016 WL 1700529, at *3 (Fla. Apr. 28, 2016)
(establishing a bright line rule for sentencing purposes that a
trial court may not consider a subsequent arrest without conviction
during sentencing), is inapplicable in this situation, where the
terms of the plea agreement itself stated that any subsequent
arrest with a finding of probable cause would be considered by the
court, and the negotiated sentence of a maximum of twenty years
would not stand and the sentencing range would be up to thirty
years in prison if there was an arrest with supporting probable
cause.  Unlike the case at bar, in Norvil, the defendant had
entered an open plea to the court, and before sentencing the state
asked the court to consider a new charge.  Id. at *1.  The open
plea circumstance referenced in Norvil is certainly distinguishable
from a negotiated plea agreement with the condition that the
defendant would face thirty years if specified events occurred upon
release on bond.[3]

Petitioner concedes that the judge correctly determined that
the motion to disqualify was moot as the predecessor judge was

---

[3] In Florida, a trial court may consider prior arrests not
resulting in convictions at sentencing if the defendant is given
the opportunity to explain or offer evidence concerning these prior
arrests.  Williams v. State, No. 1D15-1923, 2016 WL 3151778, at *2
n.4 (Fla. 1st DCA June 7, 2016) (per curiam) (Has Not Been Released
for Publication in the Permanent Law Reports) (relying on Crosby v.
State, 429 So.2d 421, 422 (Fla. 1st DCA 1983)).

administratively reassigned.   Amended Petition at 10.   Therefore, this issue will not be addressed.

Petitioner's claim that his counsel was ineffective for misadvising Petitioner that the court would be lenient was also rejected by the circuit court.   That decision was affirmed by the First District Court of Appeal.   At the hearing on the motion to withdraw the plea, defense counsel Terrell Anderson testified that he told Petitioner it was possible that Petitioner may get the bottom of the plea agreement, he never made any guarantees that Petitioner would get a lenient sentence, and he advised his client that if he violated the terms of the agreement, the plea would stand but the agreement to limit the sentence at twenty years would no longer be in effect.   Ex. F at 37-38.   Counsel reiterated that he never made any guarantees that there would be leniency by the court.   Id. at 38.   Counsel testified that he did not believe there was any manifest injustice in the entry of the plea.   Id. at 43.   Also of note, at the hearing, Petitioner testified that his counsel told him Judge Merrett "would **probably** be lenient."   Id. at 58 (emphasis added).

Deference under AEDPA should be given to the state court's decision.   Petitioner raised the issue, and the appellate court affirmed.   The state court's adjudication of this claim is not contrary to or an unreasonable application of constitutional law, or based on an unreasonable determination of the facts.   Therefore, Petitioner is not entitled to habeas relief on this ground.

Petitioner also claims that he was induced into being sentenced by Judge Merrett because counsel coerced him into not filing a motion to recuse Judge Merrett, even though his attorney knew that the judge had been the recipient of an ex parte communication leading to the issuance of a capias for Petitioner's arrest. Amended Petition at 10. At the hearing on the motion to withdraw the plea, Mr. Anderson testified that this assertion "is completely incorrect." Ex. F at 29. He explained that he told Petitioner that he believed there had been an improper communication between an officer and the trial judge, and that Petitioner had the "absolute choice and right to either let Judge Merrett handle the case for sentencing or to have [counsel] file a motion to recuse." Id. Counsel stated that he further advised his client that if he did file the motion to recuse, Judge Merrett would be required to grant it. Id. Counsel told Petitioner he did not know who Petitioner would get for a replacement judge. Id. Counsel testified that he created a document, allowing Petitioner to either choose for counsel to file a motion to recuse, or not. Id. at 17. Counsel attested that he never makes this type of decision for a defendant. Id. He explained that he had been doing this for almost thirty years. Id.

In his Amended Petition, Petitioner suggests it is unclear why his attorney failed to file to motion to recuse given the gravity of the consequences. Amended Petition at 11. At the motion to withdraw plea hearing, Petitioner stated he believed he should not

- 20 -

have been directed by his counsel to make a choice to file the motion to recuse or not, and Judge Merrett should have automatically recused himself. <u>Id</u>. at 64. Of course, in this instance, Judge Merrett did not "automatically" recuse himself, and counsel asked Petitioner to decide whether or not he wanted to continue with Judge Merrett. Counsel explained that based on his experience of almost thirty years, if he had filed the motion to recuse the judge without his client's authorization, his client would have complained that he never wanted the motion to recuse the judge filed.

The court, in denying the motion to withdraw the plea, recognized counsel's experience, found that counsel fully explained the choices, and produced the document that Petitioner signed stating he understood and agreed to waive moving to disqualify the trial judge. Ex. F at 2. The First District Court of Appeal affirmed the decision of the trial court. The state court's adjudication of this claim is not contrary to or an unreasonable application of federal constitutional law, or based on an unreasonable determination of the facts.

Finally, Petitioner claims the court relied on illegal considerations in making its determination to impose the maximum possible sentence. Again, Petitioner argues that the sentence of thirty years in prison was outside the parameters set forth in the plea agreement. Amended Petition at 12. As noted previously, the circuit judge found that the sentence of thirty years "was

- 21 -

expressly contemplated on the first page of the plea agreement should probable cause for any new charges be found." Ex. F at 1. Upon review of the written plea agreement, it clearly stated that Petitioner may face a sentence of up to thirty years if he does not comply with the terms of the plea agreement.

As previously noted, the state submitted evidence establishing the breach by a preponderance of the evidence. Although the sentencing court mentioned the fact that Petitioner was being brought down for moving a body, described as not the worst thing Petitioner ever did, there was a wealth of information that Petitioner had continued to lead a life of crime and disorder after he was released from prison. However, the impact of this testimony was tempered by the testimony of Petitioner's sister, his son, and his mother, describing Petitioner as a good family man, sincerely loved and cherished by his family.

The sentencing court, recognizing the dichotomy between Petitioner, the family man, and Petitioner, the man of the world, said:

> Mr. Sellers, I received substantial and credible evidence that you are a wonderful family man, that you are in many circumstances kind, that you have been at times self-sacrificing in the interest of others who depend on you. But the problem with that evidence is that a man's character is best defined as what he does when the people he respects are not looking.
>
> Now, I've reviewed your record, and I believe that unfortunately the prosecutor was too kind to you by half. I find an ongoing

- 22 -

history of violence, a few convictions for
misdemeanor violence, almost all of them
broken down from offenses involving gunplay.

. . . . I find probable cause and then some to
believe that you have a history of and an
inclination toward the abuse of firearms, a
disregard for the dignity of other human
beings, and a disregard for the safety of
other human beings.[4]

. . . .

. . . . But when I consider all of this evidence
and when I place it into context with your
record, I see that you have a wife and
children but you're spending your time
shacking up with your godsister.[5]  You're
threatening her.  You are stalking her.

. . . . You are not just hanging out in clubs.
You're hanging out back in the same club where
you pointed a pistol at a police officer[6] and
were found with a pistol in your pocket.

. . . .

---

[4] Of note, the state filed a Notice of Intent to Classify
Defendant as an Habitual Felony Offender, referencing felony
convictions for aggravated assault and sale or delivery of cocaine.
Ex. A at 109-10.

[5] The aggravated stalking charge arose from the tapes of the
phone calls between Petitioner and his godsister, Shawntrell
Tinsley, with whom Petitioner had an off-and-on relationship for
years.

[6] More accurately, Petitioner pointed a gun at someone else in
a club, but refused to comply with the officer's command to drop
his weapon.  Ex. E at 126-27.  Apparently the court referenced the
statement made by the prosecutor that Petitioner "drew a gun on a
police officer[,]" Ex. E at 126, but the court actually brought the
prosecutor's inaccurate statement to his attention, and the
prosecutor responded by clarifying his statement and imparted that
Petitioner pulled a gun on another patron, which prompted the
officer to shoot Petitioner.  Id. at 127.

- 23 -

> You are apparently on intimate terms with killers.  You are -- if not smoking pot, you're selling marijuana or you're holding marijuana for your friends.

Ex. E at 136-37.

With respect to the breach of the plea agreement, the court found the following:

> I do find probable cause to believe that you committed the offense of stalking.  I do find more than probable cause to believe that you committed the offense of possession of marijuana.  I further find that you failed to report as directed to your controlling detective.

Id. at 137-38.

In preparing to announce sentence, the court opined:

> Now, based on what I have learned about you, this case might be likened to the case of Al Capone.  Al Capone was responsible for certainly dozens, maybe even hundreds of murders, but Al Capone was finally brought down and packed away to prison for tax evasion.  You are being brought down permanently for moving a body, which is not the worst thing you ever did.

Id. at 139.

With respect to his first ground, Petitioner has not shown that the circuit court abused its discretion.  Moreover, in determining that Petitioner breached the plea agreement, denying the amended motion to withdraw the plea, and in imposing the thirty-year prison sentence, the circuit court's decisions were not so arbitrary and fundamentally unfair that they violated the constitutional principle of due process.  Most importantly,

- 24 -

Petitioner has not established that the state court's decision denying this claim was contrary to or an unreasonable application of federal constitutional law, or based on an unreasonable determination of the facts.  Ground one is due to be denied.

### B.  Ground Two

In his second ground, Petitioner claims he received the ineffective assistance of appellate counsel because his attorney failed to obtain the preliminary hearing transcript for the aggravated stalking charge and supplement the record with that transcript.  Amended Petition at 14.  Petitioner exhausted this claim in his state habeas petition.  Ex. K.  The First District Court of Appeal denied the petition alleging ineffective assistance of appellate counsel.  Ex. L.  Respondents concede that Petitioner exhausted his state court remedies on this ground.  Response at 48.

Petitioner has failed to show that the presence of the transcript on direct appeal would have changed the outcome of the appeal.  Indeed, the record shows that after hearing the tape recordings and testimony, the trial court made its own findings at the sentencing proceeding that there was probable cause to believe that Petitioner committed the crimes of possession of marijuana and stalking.  Additionally, the court found Petitioner failed to report.  Furthermore, the state submitted evidence establishing the breach by a preponderance of the evidence.

In addressing the claim of ineffective assistance of appellate counsel, this Court must apply the Strickland test.  Appellate

counsel raised three substantial grounds on direct appeal: (1) the trial court erred in finding Petitioner violated the plea agreement; (2) the trial court erred in denying the motion to withdraw the plea; and (3) the sentencing court relied on illegal considerations in determining the length of sentence. As noted by Respondents, appellate counsel need not raise every conceivable issue on direct appeal. See Response at 52.

Appellate counsel was not ineffective for failing to supplement the record on appeal with the transcript of the preliminary hearing from the stalking charge. Her performance was not so deficient that it fell below the objective standard of reasonableness, and Petitioner has failed to satisfy the first prong of Strickland. Also, under the circumstances at bar, Petitioner has not shown that there is a reasonable probability sufficient to undermine confidence in the outcome. Thus, Petitioner has failed to satisfy the second prong of the Strickland test by showing that there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. As such, the prejudice prong has not been met. Ground two is due to be denied.

## C. Ground Three

In his third ground, Petitioner claims he received the ineffective assistance of counsel during the plea and sentencing proceedings when counsel allowed a partial judge to impose sentence that exceeded the range in the plea agreement and/or misadvised

Petitioner as to the consequences of his guilty plea, resulting in an involuntary plea.  Amended Petition at 16-17.  In support of this ground, Petitioner claims his attorney was ineffective for misadvising him as to the maximum sentencing exposure, for failing to advise him of the elements of the offense of accessory after the fact, and for failing to advise him that he could and should move to recuse the sentencing judge from the case.  Id. at 18-19. Petitioner claims that but for this misadvice, he would not have pleaded guilty and would have proceeded to trial.  Id. at 19. Respondents concede that Petitioner exhausted his state court remedies.  Response at 53.

The two-pronged Strickland standard for reviewing claims of ineffective assistance of counsel is applicable to this ground.  In order to satisfy the prejudice prong of the two-part Strickland test in a plea case, Petitioner must show that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on proceeding to trial.  See Hill v. Lockhart.

Although the grounds were more expressly couched in terms of claims of ineffective assistance of counsel in the Rule 3.850 motion, in denying the post conviction motion, the circuit court

found that the grounds had been addressed on direct appeal.[7]  The court explained:

> Defendant previously challenged the validity and voluntariness of his plea via timely filed Motions to Withdraw Plea After Sentencing, which were ultimately denied by this Court. (Exs. D-F.)  Therefore, the First District Court of Appeal's affirmance of Defendant's judgments and sentences included a review of the legality and the voluntariness of Defendant's plea, plea agreement, and sentence. (Ex. G.) Fla. R. App. P. 9.140(b)(2)(A)(ii).  As such, the issues raised in the instant Motions have already been addressed on appeal and the instant Motions are, accordingly, denied.

Ex. O at 134.  The First District Court of Appeal affirmed per curiam.  Ex. S.

In order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).  In reviewing a state court guilty plea, a federal habeas court looks only for compliance with constitutional protections:

> This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:  If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir.) (en banc), cert.

---

[7] The Court notes that Petitioner, in his motions to withdraw his plea, claimed his counsel improperly advised him and provided ineffective assistance, but the circuit court denied the claim of ineffective assistance of counsel.  See Ex. F at 2.

denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied,
510 U.S. 967 (1993).

In this case, Petitioner has not shown that there is a
reasonable probability that, but for counsel's alleged errors,
Petitioner would not have pleaded guilty and would have insisted on
going to trial.  With regard to these offenses, the state filed a
notice of intent to classify Petitioner as an habitual felony
offender.  As the state court noted, the Petitioner received a very
generous plea offer in exchange for his agreement to testify
truthfully against his co-defendants in the Picket Fence Homicide
case.  The state agreed not to pursue an habitual offender
sentence, to nol pros four counts and seek convictions on only two
counts, and to a sentencing range of not more than twenty years and
not less than sixty-two months, if the plea agreement was not
breeched.  Ex. D at 633.  See Ex. F at 39-40 (a habitual offender
sentence, punishable by life).

Of course, there were conditions to this plea.  Not only did
Petitioner have to provide truthful testimony at trials and other
proceedings, he had to comply with additional conditions if
released from custody.  Ex. D at 633.  These conditions were
specifically set forth in the agreement and included weekly
reporting to the lead detective and not being arrested for any new
crime supported by a finding of probable cause.  Id.  Petitioner

- 29 -

was clearly notified that if he failed to appear for any required court date and/or if he were arrested for any new crime supported by a finding of probable cause, his plea would stand but the negotiated sentence would not, and he "may be sentenced to any lawful sentence which includes up to thirty 30 years FSP."  Id.

In denying Petitioner's motion to withdraw his plea, the circuit court found that his sentence of thirty years "was expressly contemplated on the first page of the plea agreement should probable cause for any new charges be found."  Ex. F at 1. When addressing Petitioner's assertion that his attorney failed to properly advise him regarding the sentence and coerced Petitioner into waiving the disqualification of the previous judge, the court, after noting that counsel was a very experienced attorney,[8] concluded that counsel fully explained the content and nature of his advice to Petitioner.  Id. at 2.  Finally, the court determined that Petitioner failed to demonstrate that his counsel "failed to provide effective assistance of counsel."  Id.

At the hearing on the motion to withdraw the plea, with regard to Petitioner's right to recuse the trial judge, Mr. Anderson

---

[8] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Here, defense counsel had almost thirty years of legal experience.

testified he first advised Petitioner that there had been what he considered to be improper, ex parte communications.  Ex. F at 29. Mr. Anderson said he told Petitioner "he had the absolute choice and right to either let Judge Merrett handle the case for sentencing" or to have counsel file a motion to recuse.  Id.  Mr. Anderson further advised Petitioner that if he did file a motion to recuse, the trial judge would be required to grant it.  Id.  He told Petitioner he did not know who would be the replacement judge. Id.  Mr. Anderson also told Petitioner that he believed that Judge Merrett knew that what he had done might not have been proper, as the judge suggested to counsel that if he wanted a recusal, he could file a motion.  Id. at 29-30.

Not only did counsel give all of this information and advice, he actually created a document for Petitioner to acknowledge his choice.  Id. at 30.  Counsel produced the acknowledgment form signed by Petitioner stating that he understood and agreed to waive seeking disqualification of the trial judge.  Id.; Ex. F at 2.

With respect to the question as to whether counsel misadvised Petitioner that the Court would be lenient in sentencing him within the plea agreement, counsel said that when Petitioner originally entered into the plea agreement, counsel advised Petitioner that he may or might possibly get a sentence at the bottom of the plea agreement range.  Ex. F at 37.  However, counsel made no promises or guarantees that Petitioner would be given a light sentence.  Id. at 37-38.  Mr. Anderson attested that he advised Petitioner that if

he violated the terms of the plea agreement, that the plea would be in and the agreement off. Id.

Petitioner admitted that the plea agreement states that in the event he either got arrested or did not come to court and testify or lied, he could get thirty years. Id. at 54. Petitioner said he understood that he had to stay out of trouble, but he felt his involvement was not substantial enough to receive a term of imprisonment for thirty years. Id. at 56. He said he was told by counsel that Judge Merrett "would probably be lenient." Id. at 58.

As background, during the plea proceeding, counsel stated, "[p]art of the agreement is if Mr. Sellers does make bond or is ROR'ed, if he is re-arrested or if he fails to appear, he would be facing 30 years Florida State Prison." Ex. D at 700-701. Reinforcing this information, the court advised Petitioner that the accessory after the fact charge was a felony punishable by up to thirty years in prison. Id. at 702.

Additionally, Petitioner claims he was never advised of the elements of the crime of accessory after the fact. Ex. F at 47. The prosecutor referenced the plea proceeding where the judge stated that the felony of being an accessory after the fact to murder was helping dispose of the body after the victim was murdered.[9] Id. at 52. See Ex. D at 701-702. Petitioner confirmed

_____

[9] After the plea was accepted, Petitioner's counsel described Petitioner's actions as "helping another individual put a body in the trunk." Ex. D at 708. At sentencing, Petitioner apologized to the victim's family and said he knew he was wrong when he helped

that he understood the judge's description of the crime.  Id. at
702.  The prosecutor provided a factual basis for the plea stating
that the state was prepared to establish that on or about September
3, 2004, Petitioner engaged in conduct which constituted accessory
after the fact to homicide, described as "assisting the concealment
of evidence of that homicide, to wit, the body." Id. at 704-705.
The prosecutor stated that the two persons charged with the
homicide were Lavario Ray and Demontreo Glee.[10]  Id. at 705.

Also of import, Petitioner signed the plea agreement.  In that
agreement, he states that he was advised of the nature of all the
charges against him, the statutory offenses included within such
charges, the range of maximum allowable punishments for each
charge, all the possible defenses to each charge, and all
circumstances in mitigation of such charges.  Ex. D at 633.  It
further states that "I have been advised of all other facts
essential to a full and complete understanding of all offenses with
which I have been charged, and of all offenses to which I am
entering this plea." Id.  It also contains an entire section
concerning his consultation with counsel.  Id. at 634.

---

put the body in the trunk.  Ex. E at 99.

[10] The Amended Information, in pertinent part, states that
Petitioner, on September 3, 2004, assisted or gave aid to Lavario
Ray and/or Damontrio Glee "by assisting in removing or concealing
evidence of a crime, knowing that Lavario Ray and/or Damontrio Glee
had committed a felony, to wit: Homicide, with the intent that
Lavario Ray and/or Damontrio Glee shall avoid or escape detection,
arrest, trial, or punishment, contrary to the provisions of Section
777.03, Florida Statutes."  Ex. A at 87.

At the plea proceeding, Petitioner confirmed that he read and understood the form "[v]ery much." Ex. D at 704. He stated that his counsel explained the form to him. Id. Of note, counsel stipulated to the factual basis for count one, the accessory charge. Id. at 705.

The Court recognizes that solemn declarations in open court carry a strong presumption of verity. Indeed, the record shows that Petitioner pleaded guilty because he wished to do so, fully apprised that he was facing a maximum penalty of thirty years in prison if he failed to comply with the plea agreement upon his release on bond.[11] See United States v. Castro, 736 F.3d 1308, 1314 (11th Cir. 2013) (per curiam) (the court was not convinced that the defendant would have rejected the plea agreement as he avoided prosecution of numerous offenses and faced a stiff sentence if he proceeded to trial), cert. denied, 134 S.Ct. 1331 (2014).

Upon review of the record, at the inception of the plea proceeding, defense counsel announced that his client had authorized him to enter a plea of guilty. Ex. D at 699. Counsel explained that the agreement would be a sentence somewhere between sixty-two months and twenty years in prison, but if Petitioner made bond or was released and was re-arrested or failed to appear, he would be facing thirty years in prison. Id. at 700-701.

---

[11] Petitioner also avoided the habitual offender classification by accepting the plea.

After Petitioner was sworn, the court conducted a plea colloquy. Id. at 701. First, the court inquired as to whether Petitioner heard and understood his attorney's statements. Id. Petitioner responded in the affirmative. Id. The court described the two felonies to which Petitioner was pleading and referenced the plea agreement. Id. at 701-702. The court explained Petitioner was pleading to a accessory after the fact, a felony punishable by up to thirty years in prison. Id. at 702. The court stated that Petitioner was entering a plea to aggravated assault punishable by a sentence up to five years in prison. Id. The court mentioned that Petitioner may be classified as a habitual felony offender. Id. The court reiterated the terms of the plea agreement and the sentencing range. Id. Petitioner responded that he understood these factors. Id.

The court advised Petitioner of the rights he was waiving by entering his plea. Id. at 702-703. Petitioner agreed that he understood these rights. Id. at 703. He stated that he had determined the plea was in his best interest. Id. The court inquired as to whether anyone had forced Petitioner into accepting the plea. Id. Petitioner responded in the negative. Id. The court asked Petitioner if he signed, read, and understood the plea form. Id. at 703-704. Petitioner confirmed that he had done so. Id. at 704. He also confirmed that his counsel explained the form to him. Id.

- 35 -

At this point, the prosecutor provided a factual basis for the plea. Id. at 704-705. Defense counsel stipulated as to count one and made no objection to count six. Id. at 705. Petitioner stated he had no complaints about his counsel's representation. Id. at 705-706. The court found a factual basis for the plea and concluded that Petitioner freely and voluntarily entered his guilty plea with a full understanding of the nature of the charges, the consequences of the plea, and the maximum possible sentence. Id. at 706.

In short, Petitioner stated that he was completely satisfied with counsel's performance. He confirmed that he had gone over the plea form in its entirety with his counsel and that counsel had answered all of his questions. Petitioner had no questions concerning the maximum penalty he faced and he stated he understood his counsel's statements about the plea agreement. He confirmed that he was not coerced into entering the plea. Finally, with regard to the underlying basis for the charge, no exceptions or objections were made to the factual basis for the plea.

Based on all of the above and the record before the Court, Petitioner has failed to show that his counsel's performance was deficient. Even assuming deficient performance, Petitioner has not shown prejudice, as Petitioner was facing substantial time. Thus, he has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer

had given the assistance that Petitioner has alleged should have been provided.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance or prejudice.

Petitioner is not entitled to relief on ground three of the Amended Petition, the claim of ineffective assistance of trial counsel.  Deference, under AEDPA, should be given to the state court's decisions.  Petitioner raised these issues in his motions to withdraw his plea after sentencing.  He claimed he received the ineffective assistance of trial counsel in his Rule 3.850 motion. The circuit court denied the motions, and the appellate court affirmed the circuit court's decisions.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill, or based on an unreasonable determination of the facts.  In sum, ground three, Petitioner's claim of ineffective assistance of counsel resulting in an involuntary plea, is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

- 37 -

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[12]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of July, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 6/30
c:
Counsel of Record

---

[12] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.